LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DINAEL SIRIN, and
SANTOS PACHECO,
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class,*

                Plaintiffs,

       v.

CBN I, INC. d/b/a BELLA NAPOLI,
T&T 130 PIZZA CORP. d/b/a BELLA NAPOLI,
SALTOTO, INC. d/b/a SALVO'S PIZZABAR,
TONY RUSSO, MATTHEW LAMARCA, AURORA
LAMARCA, and SALVATORE INZERILLO

                Defendants.

---

Case No:

**CLASS AND**
**COLLECTIVE ACTION**
**COMPLAINT**

Plaintiffs, DINAEL SIRIN and SANTOS PACHECO ("Plaintiffs"), on behalf of themselves and

others similarly situated, by and through their undersigned attorneys, hereby file this Class and

Collective Action Complaint against Defendants, CBN I, INC. d/b/a BELLA NAPOLI, T&T

130 PIZZA CORP. d/b/a BELLA NAPOLI, SALTOTO, INC. d/b/a SALVO'S PIZZABAR (the

"Corporate Defendants"), TONY RUSSO, MATTHEW LAMARCA, AURORA LAMARCA,

and SALVATORE INZERILLO (together the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime, (3) liquidated damages and (4) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime (3) unpaid spread-of-hours premium, (4) statutory penalties, (5) liquidated damages and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.      (a) Plaintiff, DINAEL SIRIN, for all relevant time periods, was a resident of Queens County, New York.

        (b) Plaintiff, SANTOS PACHECO, for all relevant time periods, was a resident of Bronx, New York.

6.      Corporate Defendants:

(a)  CBN I, INC. d/b/a BELLA NAPOLI is a limited liability company organized under the laws of the State of New York with a principal place of business and an address for service of process located at 257 7th Avenue, New York, New York 10001.

(b)  T&T 130 PIZZA CORP. d/b/a BELLA NAPOLI is a corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 130 Madison Avenue, New York, New York 10016.

(c)  SALTOTO, INC. d/b/a SALVO'S PIZZABAR is a domestic business corporation with a principal place of business and an address for service of process located at 1477 York Avenue, New York, New York 10075.

(d)  Upon information and belief, Defendant, SALTOTO, INC. is a successor in interest to CBN I, INC. and T&T 130 PIZZA CORP. The Successor Defendant is successor-in-interest to the Predecessor Defendants because:

`(i) The Successor Defendant continued the operation of the same type of restaurant;

(ii) The Predecessor Defendant retained a near identical menu;

(iii) The Predecessor Defendant transferred inventory and equipment to the Successor Defendant;

(iv) The Successor Defendant continued the labor and employment policies of the Predecessor Defendant;

(vi) The Successor Defendant continued the operation of the business at the same physical address with the same look and feel;

(vii) The Successor Defendant retained employees previously employed by Predecessor Defendant;

(viii) The Successor Defendant employ individuals in the same positions, and under substantially the same working conditions;

(ix) The Successor Defendant had notice of potential liability under the FLSA and NYLL prior to acquiring the business from Predecessor Defendant;

(x) The Successor Defendant possessed knowledge that unpaid wages were owed to employees prior to acquiring the business from Predecessor Defendant.

7.    Individual Defendants:

(a) TONY RUSSO was a principal of Corporate Defendants CBN I, INC. and T & T 130 PIZZA CORP. TONY RUSSO exercised operational control as it related to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. He exercised the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class at each of the restaurant locations. At all times, employees could complain to TONY RUSSO directly regarding any of the terms of their employment, and TONY RUSSO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. TONY RUSSO regularly visited each of the Bella Napoli restaurants and he directly reprimanded any employee who does not perform his duties correctly.

TONY RUSSO additionally had the power to supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs and the Class. TONY RUSSO exercised functional control over the business and financial operations of all Corporate

Defendants.  He ensured that employees properly prepare food and effectively serve and cater to customers to ensure that the Bella Napoli restaurants are operating efficiently and profitably.

(b)  MATTHEW LAMARCA was a principal of Corporate Defendants CBN I, INC. and T & T 130 PIZZA CORP. MATTHEW LAMARCA exercised operational control as it related to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. He exercised the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class at each of the restaurant locations. At all times, employees could complain to MATTHEW LAMARCA directly regarding any of the terms of their employment, and MATTHEW LAMARCA would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. MATTHEW LAMARCA regularly visited each of the Bella Napoli restaurants and he directly reprimanded any employee who did not perform his duties correctly.

MATTHEW LAMARCA additionally had the power to supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs and the Class. MATTHEW LAMARCA exercised functional control over the business and financial operations of all Corporate Defendants. He ensured that employees properly prepare food and effectively serve and cater to customers to ensure that the Bella Napoli restaurants are operating efficiently and profitably.

(c)  AURORA LAMARCA was a principal of Corporate Defendants CBN I, INC. and T & T 130 PIZZA CORP. AURORA LAMARCA exercised operational control as it related to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. She exercised the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class at each of the restaurant locations. At all times, employees could complain to AURORA LAMARCA directly regarding any of the terms of their employment, and AURORA LAMARCA would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. AURORA LAMARCA regularly visited each of the Bella Napoli restaurants and she directly reprimanded any employee who did not perform his duties correctly.

AURORA LAMARCA additionally had the power to supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs and the Class. AURORA LAMARCA exercised functional control over the business and financial operations of all Corporate Defendants. She ensured that employees properly prepare food and effectively serve and cater to customers to ensure that the Bella Napoli restaurants are operating efficiently and profitably.

(d) SALVATORE INZERILLO is a principal of Corporate Defendant SALTOTO, INC. SALVATORE INZERILLO exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. He exercises the power to (and also

delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class at each of the restaurant locations. At all times, employees could complain to SALVATORE INZERILLO directly regarding any of the terms of their employment, and SALVATORE INZERILLO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. SALVATORE INZERILLO regularly visits each of the Bella Napoli restaurants and he directly reprimands any employee who does not perform his duties correctly.

SALVATORE INZERILLO additionally has the power to supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiffs, FLSA Collective Plaintiffs and the Class. SALVATORE INZERILLO exercises functional control over the business and financial operations of all Corporate Defendants. He ensures that employees properly prepare food and effectively serve and cater to customers to ensure that the Bella Napoli restaurants are operating efficiently and profitably.

8. The Defendants operated three pizza restaurants as a single integrated enterprise with the following addresses:

(a) 257 7th Avenue, New York, New York 10001 ("7th Avenue location");

(b) 130 Madison Avenue, New York, New York 10016 ("Madison Avenue location");

(c) 1477 York Avenue, New York, New York 10075 ("York Avenue location")

9. The three "Bella Napoli" restaurants are operated by Defendants as a single integrated enterprise due to the following factors: They share common ownership and serve similar menu items. The "Bella Napoli" Facebook Page lists all three restaurant locations and features a common menu, photographs, reviews, specialties, provided services, and general information (see Exhibit A). Merchandise and employees are interchangable among the three pizza restaurants.

10. At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

11. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including delivery persons, food preparers, cooks, line-cooks, dishwashers, cleaning persons, counter persons and stock persons) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

13. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper minimum wage and overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. With respect to

employees who were tipped employees, including Plaintiff DINAEL SIRIN ("Tipped Subclass"), Defendants were not entitled to take any tip credits under the FLSA, because they (i) failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, (ii) caused tipped employees to engage at least 20% of their working hours in non-tipped activities, (iii) failed to pay tipped employees the proper overtime rate and (iv) failed to maintain daily records of tips on behalf of tipped employees.

14.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

15.    Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons, including, delivery persons, food preparers, cooks, line-cooks, dishwashers, cleaning persons, counter persons and stock persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

16.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

18.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures. With respect to employees who were tipped employees, including Plaintiff DINAEL SIRIN ("Tipped Subclass"), Defendants were not entitled to take any tip credits under the New York Labor Law because they (i) failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, (ii) caused tipped employees to engage at least 20% of their working hours in non-tipped activities, (iii) failed to pay tipped employees the proper overtime rate and (iv) failed to maintain daily records of tips on behalf of tipped employees. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices

and procedures.

19.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

20.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In

addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

22.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d)  Whether Defendants properly notified Plaintiffs and the Class members of their hourly rate and overtime rate;

e)  Whether Defendants properly provided notice to members of the Tipped Subclass that Defendants were taking a tip credit;

f)  Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period and their

proper overtime rate of compensation and (ii) all non-exempt employees information required to be provided on wage statements as required under the New York Labor Law;

g)  Whether Defendants provided to Plaintiffs and Class members proper wage and hour notice, at date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law;

h)  Whether Defendants caused members of the Tipped Subclass to engage in non-tipped duties exceeding 20% of each workday;

i)  Whether Defendants maintained daily records of tips on behalf of tipped employees;

j)  Whether Defendants provided to Plaintiffs and Class members proper wage statements with each payment of wages as required by New York Labor Law;

k)  Whether Defendants paid Plaintiffs and Class members the federal and state minimum wage for all hours worked;

l)  Whether Defendants properly compensated Plaintiffs and Class members for overtime under state and federal law;

m)  Whether Defendants paid the "spread of hours" premium owed to employees working more than ten hours per day as required by New York Labor Law.

## **STATEMENT OF FACTS**

23.  Plaintiff, DINAEL SIRIN:

(a) In or around August 2015, Plaintiff DINAEL SIRIN was hired by Defendants to work for the "Bella Napoli" restaurant 7th Avenue location. Plaintiff DINAEL SIRIN's employment was terminated by Defendants on or about August 5th, 2017.

(b) During Plaintiff DINAEL SIRIN's employment as a dishwasher and delivery person, he had a regular weekly work schedule as follows: on Mondays, 9:00 a.m. to 11:00 p.m.; Wednesdays, 9:00 a.m. to 4:00 p.m.; Thursdays, 10:00 a.m. to 11:00 p.m.; Fridays, 10:00 a.m. to 11:00 p.m.; and Sundays, 11:00 a.m. to 10:30 p.m. From the start of Plaintiff DINAEL SIRIN's employment, he was paid a fixed salary rate of $400.00 per week for all hours worked, including all hours worked over 40 per week. Then from about January 2014, he was paid a fixed salary rate of $500.00 per week for all hours worked, including all hours worked over 40 per week.  Then from about January 2015, he was paid an hourly rate of $10.00 per hour for all hours worked, including all hours worked over 40 per week. Then from about August 2015, he was paid an hourly rate of $11.00 per hour for all hours worked, including all hours worked over 40 per week. Plaintiff DINAEL SIRIN is a tipped employee.

(c). Plaintiff, FLSA Collective Plaintiffs and Class members did not receive any notice that Defendants were taking a tip credit. In addition, they did not receive any notice as to the amount of tip credit allowance taken for each payment period during their employment. They were also never informed in writing as to their hourly rate of pay and overtime rate of pay.

24. Plaintiffs DINAEL SIRIN and the Tipped Subclass were required to engage in 20% of their working time in non-tipped related activities such as cleaning the restaurant, washing dishes, preparing food and other non-tip related activities.

25.  Plaintiff, SANTOS PACHECO:

(a) In or around January of 2007, Plaintiff SANTOS PACHECO was hired by Defendants to work at the 7th Avenue location. Plaintiff SANTOS PACHECO's employment was terminated by Defendants on or about August 15th, 2017.

(b) Throughout his entire employment, Plaintiff SANTOS PACHECO worked as a cook. His work schedule since about January 2007 has been as follows: Mondays, 9:00 a.m. to 11:00 p.m.; Wednesdays, 9:00am to 4:00 p.m.; Thursdays, 10:00 a.m. to 11:00 p.m.; Fridays, 10:100 a.m. to 11:00 p.m.; and Sundays 11:00am to 10:30 p.m. He was paid on a fixed salary rate of $400 per week. Then in or around January 2014, he was paid on a fixed salary rate of $500 per week. Then in or around January 2015, he was paid a base hourly rate of $10 per hour for all hours worked. Then in or around August 2015, he was paid a base hourly rate of $11 per hour for all hours worked, including all hours worked over 40 in a workweek.

26.   At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class members at hourly rates below the standard minimum wage. With respect to the Tipped Subclass, Defendants additionally claimed an invalid tip credit.

27. For the hours that Defendants did pay Plaintiff, Defendants paid members of the Tipped Subclass the "tip credit" minimum wage, which is less than the federal and New York State minimum wages. Defendants, however, were not entitled to take any tip credits under the FLSA or NYLL, because they (i) failed to properly provide notice to all tipped employees that Defendants were taking a tip credit in violation of the FLSA and NYLL, (ii) failed to provide proper wage statements informing tipped employees of the amount of tip credit taken for each payment period in violation of the NYLL, (iii) caused tipped employees to engage in non-tipped duties exceeding 20% of each workday in violation of NYLL, rendering the tip credit invalid in violation of the FLSA and NYLL and (iv) failed to maintain daily records of tips on behalf of tipped employees.

28. Defendants illegally paid Plaintiffs, FLSA Collective Plaintiffs and Class Members partly in cash and without any wage statements during their entire periods of employment.

15

29.  Although Plaintiffs, FLSA Collective Plaintiffs and Class members regularly worked over forty hours per week, Defendants never paid them at the required overtime premium rate.

30.  Plaintiffs, FLSA Collective Plaintiffs, and Class members had workdays that regularly exceeded 10 hours in length. Defendants never paid them the "spread of hours" premium as required by NYLL.

31.  Defendants unlawfully failed to pay the Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half)  for hours they worked over 40 in a workweek.

32.  At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with wage notices or wage statements as required by NYLL. In fact, Defendants paid Class members, including Plaintiffs, in cash and did not provide them with a wage statement or any other type of receipt with their payment of wages.

33.  Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

34.  Plaintiffs reallege and reaver Paragraphs 1 through 33 of this class and collective action Complaint as if fully set forth herein.

35.  At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

36.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

37.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

38.    At all relevant times, the Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs for their hours worked. With respect to the Tipped Subclass, Defendants were not entitled to take any tip credits under the FLSA, because they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit.

39.    At all relevant times, the Defendants also engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty hours per workweek.

40.    Plaintiffs are in possession of certain records concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiffs intend to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

41.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

42.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs

and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

43. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime wages, plus an equal amount as liquidated damages.

44. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS</u>

45. Plaintiffs reallege and reaver Paragraphs 1 through 44 of this class and collective action Complaint as if fully set forth herein.

46. At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

47. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

48. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

49. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay Plaintiffs minimum wages in the lawful amount for hours worked. With respect to the Tipped Subclass, Defendants were not entitled to take any tip credits under the NYLL, because they (i) failed to properly provide notice to all tipped employees that Defendants were taking a tip credit

in violation of the NYLL, (ii) failed to provide proper wage statements informing tipped employees of the amount of tip credit taken for each payment period in violation of the NYLL, (iii) caused tipped employees to engage in non-tipped duties exceeding 20% of each workday in violation of NYLL and (iv) failed to maintain daily records of tips on behalf of tipped employees.

50. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay the spread of hours premium required by state law.

51. Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

52. Defendants failed to provide proper wage statements with every payment as required by New York Lab. Law § 195(3). With respect to the Tipped Subclass, Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never included in any wage statements to tipped employees and Defendants failed to disclose the proper overtime rate of pay.

53. Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid overtime, unpaid minimum wage, unpaid spread of hours premium, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.      An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

d.      An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

e.      An award of unpaid spread of hours premium due under the New York Labor Law;

f.      An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage pursuant to 29 U.S.C. § 216;

h.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wage and spread of hours premium pursuant to the New York Labor Law;

i.      An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.      Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

l.      Designation of this action as a class action pursuant to F.R.C.P. 23;

m.      Designation of Plaintiffs as Representatives of Class; and

n.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: August 29, 2017

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

By:    */s/ C.K. Lee*
        C.K. Lee (CL 4086)